May it please the court. My name is Cindy Chang. I'm representing the petitioners here. And this is an immigration case, and the petitioners are a family of four. A father, mother, and two sons. They came to the United States in 1990, and they did not apply for asylum until 2001, so they are barred from getting asylum granted. However, today, in front of the court, the issue is if they are eligible for withholding of removal. This case has been appealed and denied and appealed again, and at one point, a government attorney made a motion to remand this case based on the new case Wakari came out after the judge's decision. However, the BIA still denied this case. I believe the issue boiled down to if we can show that there is an individualized risk on this case, which I argue that they did, because the family of four, except the youngest son, when he came, he was only two years old. All the other three family members had suffered harms based on their ethnicity and religion. For example, the lead petitioner, the father here, in 1965, his house was burned down, because in 1965, there was a big riot against Chinese ethnicity in Indonesia. And at such a young age, he has suffered or experienced that kind of brutal discrimination against his race. And during his lifetime in Indonesia, he has suffered other kinds of discrimination, bad treatment. For example, the police would treat him unfairly when he needed medical attention. The hospital would treat him unfairly only because- I remember the second. What was an example of the first? Say again? What was an example of the first, i.e., the police treating him badly? I believe at one instance, the police stopped him, which is very common practice in Indonesia. The police will stop people on the street and ask for their identity. On their identity card, they are showing their ethnicity or their religion. And most of the time, the police would just ask for money just because they- Did he say this happened to him? I believe so. Did he or didn't he? Because I don't remember seeing that. I believe at one point, he mentioned that he was treated unfairly by the police on the street. The focus in the briefing was on his ethnicity. After the BIA rendered its decision, that Tambalun case came down, which found that Christian Indonesians are a disfavored group. Yes. Would it make sense to remand, to further develop that record? Or do you believe that all of these issues were fairly considered, the ethnicity and the religion? I don't think so, Your Honor. In regard to that, because the petitioner represented themselves at the beginning, all the record from the immigration court to BIA, the first appeal, he did all by himself. And I think he did not completely present his case. In the record- So you would be in favor, you would invite a remand- Yes. So the court can consider religion? Yes, Your Honor, if that would be the case. What about the, as I understand the respondent's brief, at least there's an implicit argument that if the court were to remand, it would be futile in that there's much evidence that was focused on by petitioners that they left in 1990-91 before tensions arose between Muslims and Chinese Christians in the mid-1990s. There was citation to a number of incidents, including rock-throwing incidents, the riots in 1965, inappropriate touching, delay in medical treatment. And as I understand the respondent's brief, they would argue that those are over 20 years ago and would be insufficient to show by a clear probability that there would be future persecution. Yeah, if I may, that was another argument. They had suffered harm early on, so they left Indonesia in 1990, so early on because they had previous bad experience, suffering. After they left Indonesia in 1990, they never went back because they knew if they went back to Indonesia because of their race, because of their religion, they would suffer the same thing. So I don't think we can use the timing. They came so early, and then later on there are other riots, and they were not there to minimize, undermine their claim. Actually, I think they're further and stronger their claim that they had suffered harms, so they left so early. I'm sorry? Oh, I'm sorry. In terms of the question that Judge Subraw asked about the combination of religion and ethnicity, didn't the BIA essentially look at it as a joint claim? What difference does it make whether you look at they were Chinese and they were Christians, and whatever happened to them happened to them in that guise, right? So would there be any point in a remand to look at the two of them together? I mean, the question is, the issue is really, were they sufficiently singled out? The BIA didn't say that the reason that that waqari didn't apply was because they were only Chinese and they weren't Christian. It was because they said whatever happened to them wasn't sufficient. I agree, Your Honor. However, I believe before we talk about remand to discuss the religious part is because from the beginning they did not address anything in regards to religion. They only emphasized on their ethnicity. But what difference does it make? Certain incidents happened. There were only that many incidents, whatever they were. The BIA considered all of them. They considered them insufficient, but they didn't consider one of them inapplicable because it only pertained to religion, right? So what difference does it make? Well, because they did not really address the religious part. But what is the religious part? That's separate. I understand that, but what about the facts of the case separate out the religion from the ethnicity? Nothing, right? That's the issue. They didn't present any facts about their religion. However, they are Christian. They are faithful religion. They attend the church here. I understand that. If they return to Indonesia, in that part they cannot freely practice their religion. But they didn't present any facts, just as you said. Right, right. They did not. They did not. Somewhere in the briefing the respondents argued that in the last 20 years things may have gotten better for petitioners with respect to their religion, that there are hundreds of thousands or so practicing Christian Indonesians. Your Honor, I don't think that statement is totally accurate because from time to time, even until 2001, 2002, they still have church burning. And even until today there's unreported sanction about building the church or allowing Christians to freely attend the church in Indonesia. So I want to focus is if the issue boils down to individualized risk, I believe my client did prove that part because they did suffer individualized risk when they were in Indonesia as a Chinese as Christian. In that regard, I believe they should be eligible for the relief in the form of withholding of removal. Do you want to reserve any time? Yes, please. Thank you. Thank you. Yes, sir. May it please the court. My name is Lance Jolly. I represent the respondent, the United States Attorney General. Substantial evidence supports the agency's denial of withholding of removal. Petitioners, the record does not compel the conclusion that petitioners suffered past persecution. The record also does not establish a reasonable possibility that any of the petitioners would be singled out individually for persecution. Although there's an alternative for pattern or practice of persecution, there has been no pattern or practice of persecution established. All right. But the issue here is really the disfavored group analysis and how that works. Correct. Mr. Jolly, this is Judge Newman. I'd like to go right to what seems to me being a law by the government. This would be a very good case for mediation. These are people who have 23 cases in the United States. They have no criminal record at all. And if I look at the cases that have been successfully mediated, they're exactly the kind of people that the government could agree not to pursue their expulsion. Can you tell me any reason why this would be a good candidate for mediation? It has been in mediation once and failed. And I don't see any reason why DHS would have changed its mind since the failed mediation. When was that? I was not aware of that, so when was it? It was within the last four years. Well, I know it matters, though, because there has been some change in policy. The attorney general is taking a very different attitude towards people who have an absolutely clean record in the United States, having been here 23-plus years. So why not give it another shot? Did you happen to ask them before you came here? I asked the attorney of record of the mediation. I see. I would not reach out again to DHS. It would appear that it would make a difference when this was. If the mediation occurred after 2011, it certainly would not make a difference. If it occurred prior to the Morton memorandum. Maybe we could figure it out from when the remand was. When was the earlier case here? The court remanded in, let's see. The court remand's order is on page 35 of the record. Okay, fine. When was it? That was in 2009, the remand motion. All right. So it was earlier. Mediation was after, I believe. Well, the mediation would have been then, not after. I believe not. Is that the only other time the case was here? Well, after the remand motion, it was appealed. After the remand, the board issued another decision denying the motion to reopen. Right. That was petitioned for review, and I believe that's when the mediation occurred. It was after this last petition for review. Which is the current one. Correct. No, that wouldn't be right. I mean, at least it would be unusual, because ordinarily the mediations are. Well, after WACRI, I think the government remanded a lot of cases. Right. And so I don't think that was necessarily a product of the mediation. Again, I apologize for not. Well, in any event, you wouldn't object to it. It's why I was at least asking you to ask them. Well, I don't mind, but if the mediation occurred after 2011, because this is a motion to reopen case, I doubt. I understand that, but you can't tell us when it did. So why don't we go on from here? We can find that out. We can find that out. Okay. What about the remand question in light of the Tampaloon case, which was decided after this case? Wouldn't it be worthwhile to pursue that, to allow the BIA to operate off a full record? I see no reason. WACRI involved Chinese Christians. They addressed that aspect. They also addressed SAIL, which is an ethnic Chinese case. Although Christians in general may be viewed as a disfavored group, there's absolutely no showing that they would be individually targeted because of that. The cases that have shown some individual targeting, the alien was like a pastor or had some high role. But at least the cases were cases in which they were Christians and not Chinese. Correct. You say in your brief, or the BIA says, I guess, that the facts here were very different than the facts in WACRI and SAIL. Can you tell me exactly why? I mean, there was some singling out here, right? It was a long time ago, but there was some. Possibly. A lot of the stuff occurred during the civil riots in the 60s. And whether that is what constitutes an individual kind of targeting or just some sort of general civil strife. But that's the level of individual targeting. It was basically during these. Well, they also claimed that the police discriminated against them. Yes. The government does not contend that they have not been discriminated. And they don't contend that they have shown some sort of pattern or practice. But isn't that the difference between a disfavored group analysis and a past persecution analysis? Which is you don't have to have past persecution. You have to have past singling out for discriminatory treatment. But it has to be beyond that suffered by the disfavored group in general. Where did you get that from? Let me start. I believe it's in WACRI, but the fact that they're a disfavored group is based on this general level of discrimination. And just because they've suffered some discrimination, it would not seem to constitute as individual targeting. My understanding was that the point was precisely that because the group was in general a disfavored group, there was, unless you can show me where WACRI says that, since I wrote it, I have some knowledge of it. It depends on how, I guess it depends on how you define individually targeting. Right. Yeah. And if it's just because you suffered some generalized instance of discrimination, I don't believe that would rise to the individual targeting aspect of the disfavored group analysis. Okay, anything else? No, if the court has no other questions. Just a note that there's no derivative beneficiaries of withholding of removal, and so each application would have to be considered on their own. Why is that, by the way? The statute doesn't allow. Oh, I see. I understand. And Petitioner waived their asylum and CAT claims. But if the court has no other questions, the court should deny the petition for review. Thank you. Thank you. Thank you. Yes, ma'am. I will argue that they were singled out based on their ethnicity and religion, because if they were not singled out, they would not have suffered the harm they had been through. For example, the older son, even in school, because he's Chinese ethnicity, because the way they dress differently than the Muslim people, the kids throw rocks at him. I don't know even how to describe any other more severe harm we have to say they need to suffer in order for the relief to be granted. These petitioners, because of their suffering, because of their ethnicity, because of their religion, they knew they couldn't get a safe living environment in Indonesia, so they left their country early on, and because of those suffering, they applied for relief in the United States. And I believe those incidents happened to them was not just randomly. It was because they are Chinese descent and they are Christians, so they were targeted. Can you tell us what you know about the history of mediation in this case? I believe the mediation was conducted in September of 2013. Oh, really? How did that occur? It was in this case, then? It was this case. This appeal? I see. Because the two sons were qualified for DACA, the deferred action, so the mediator was trying to see if we can get those two boys, get those deferred actions, which we did. However, at the last minute, the government said the policy changed. Even the sons can get DACA, they're still not going to agree to grant the relief. Because before that point, it was like if the children can get DACA, then the parents will be able to get some kind of relief. But that was my understanding. They told me I have no say. Policy changed. The children did get the DACA application? They did. But the mediation was unsuccessful as to withholding. Yeah, it was not successful.
judges: Sabraw, NOONAN, BERZON